**STATE OF MICHIGAN**
**IN THE THIRD CIRCUIT COURT FOR THE COUNTY OF WAYNE**

_____

**CITY OF DETROIT**
        Plaintiff,

                                       Case No. 23-012532-CZ

-vs-

                                       Hon. Patricia Fresard

**SOUL TRIBE INTERNATIONAL MINISTRIES,**
**ROBERT SHUMAKE AKA BOBBY JAPHIA,**
        Defendants.

| | |
|---|---|
| DOUGLAS BAKER (P24517) | THOMAS M.J. LAVIGNE (P58395) |
| ALEXA SCHNEIDER (P80322) | JULIA A. GILBERT (P74262) |
| City of Detroit Law Department | Cannabis Counsel® |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 2 Woodward Ave. Suite 500 | 2930 E. Jefferson Ave. |
| CAYMC | Detroit, MI 48207 |
| Detroit, MI 48226-3437 | (T) (313) 446-2235 |
| (T) (313) 237-3043 | |

**DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING RELIGIOUS FREEDOM**
**PROTECTIONS PURSUANT TO RELIGIOUS FREEDOM RESTORATION ACT**

**FACTUAL BACKGROUND**

Defendant Robert Shumake (hereinafter "Shaman Shu") is the pastor and organizing member at Defendant Soul Tribe International Ministries, an ecclesiastical non-profit corporation. Defendant Bobby Japhia has been the president of Soul Tribe International Ministries since June 8, 2023. Soul Tribes International Ministries (hereinafter "Soul Tribes") is a religious, and non-profit organization, duly organized and existing under the laws of the State of Michigan, with its principal place of business located at 15000 Southfield Rd, Detroit, MI 48223. Soul Tribes is dedicated to support religious freedom and practices and has been actively involved in fostering healing and growth within individuals and communities through traditional, indigenous practices including plant medicine, sound therapy, breathwork, and ceremonial work.

Document received by the MI Wayne 3rd Circuit Court.

On September 22, 2023, the Detroit Police Department executed a search warrant at Soul Tribes and Defendants' property was seized. After the search warrant was executed, the City of Detroit initiated a nuisance abatement action against Defendants. Plaintiff's actions have imposed a substantial burden on Defendants' exercise and enjoyment of their freedom of expression rights, as protected by both the U.S. Constitution and the State of Michigan. Further, Plaintiffs violated the Religious Freedom Restoration Act (RFRA) by depriving Defendants of their religious rights.  As such, this Court should deny the injunction and dismiss this matter based upon the arguments set forth or set this matter for trial.

## ARGUMENT

**I.  The City of Detroit is in Violation of the Religious Freedom Restoration Act And the Michigan and US Constitutions as it has Failed to Demonstrate a Compelling Governmental Interest and the Least Restrictive Means to Achieve that Interest.**

Michigan follows the Religious Freedom Restoration Act which requires a compelling governmental interest and the least restrictive way to achieve that interest. Every person in Michigan is at liberty to worship God according to the dictates of that person's own conscience; and the civil and political rights, privileges, and capacities of any person may not be diminished or enlarged on account of a person's religious belief. Mich. Const. 1963, art. 1, § 4. The Michigan Constitution contains its own guarantee of religious freedom which is at least as protective of religious liberty as the United States Constitution. *Winkler by Winkler v. Marist Fathers of Detroit, Inc.*, 500 Mich. 327, 901 N.W.2d 566, 348 Ed. Law Rep. 410 (2017) (quoting *People v. DeJonge* , 442 Mich. 266, 501 N.W.2d 127, 131 n.9 (1993). In fact, Michigan courts have interpreted the Michigan Constitution to provide broader coverage than that of the United States constitution. "[Courts] apply the compelling state interest test (strict scrutiny) to challenges under the free exercise language in [Mich.] Const. art. 1, § 4, regardless of whether

Document received by the MI Wayne 3rd Circuit Court.

the statute at issue is generally applicable and religion-neutral." *Champion v. Sec. of State* , 281 Mich.App. 307, 761 N.W.2d 747, 753 (2008) (citing *Reid v. Kenowa Pub. Schs.* , 261 Mich.App. 17, 680 N.W.2d 62, 68-69 (2004) ); see also *McCready v. Hoffius* , 459 Mich. 131, 586 N.W.2d 723, 729 (1998), *vacated on other grounds* , 459 Mich. 1235, 593 N.W.2d 545 (1999) (separating analysis on the First Amendment and the Michigan Constitution and reviewing a generally applicable law under a "compelling state interest test").

Irrespective of whether Michigan courts require the strict scrutiny/compelling interest standard be applied to neutral or generally applicable laws, which, as the above authorities clearly denote that they do, the laws at issue here are NOT neutral or generally applicable and therefore warrant the imposition of the strict scrutiny/compelling interest standard. the Nuisance ordinance is not, on its face neutral, and the City's continued efforts to enforce it and other City ordinances against the Church, thereby further abridging its and its members free exercise rights, further highlight the neutrality issues inherent in them.  More specifically, the following facts speak to the lack of neutrality: The Nuisance law at issue gives authority to state and local prosecutors, at their sole discretion, to bring actions against Michigan citizens, in the name of the State, for violations of the Nuisance law; Under the Nuisance law, a building or place is a public nuisance if  "…(c) it is used for the unlawful manufacture, transporting, sale, keeping for sale, bartering, or furnishing of a controlled substance." (Emphasis added); The Nuisance law does not define the word "unlawful," thereby giving absolute and sole discretion to state and local prosecutors in making a lawful/unlawful determination under the statute; In this case, based upon the pleadings alone, it is very apparent that the City and its officials take issue with the substance of the Church's beliefs and practices, which has led them to conclude that the Church's dispensing of Sacrament to its members is "unlawful" and therefore subject to an injunction

Document received by the MI Wayne 3rd Circuit Court.

under the Nuisance law; Throughout the pleadings, the City's attorney makes several disparaging remarks about the Church's beliefs and practices which blatantly shows the lack of neutrality both inherent in the Nuisance statute, and in the City's enforcement thereof, in this case.  Please see attached Free Exercise Factual Appendix for a non-exhaustive list of the facts supporting the Church's assertions that the City's actions and the laws and ordinances at issue are subject to the strict scrutiny/compelling interest standard in this case pursuant to current U.S. Supreme Court precedent on the issue.

United States law regarding the protection of religious freedom is shaped by the ruling by the United States Supreme Court in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 126 S. Ct. 1211, 163 L. Ed. 2d 1017 (2006), which upholds the Religious Freedom Restoration Act of 1993, 42 U.S.C. 2000(b)(b)(2004) (RFRA hereafter) restoring the compelling interest test abandoned by the United States Supreme Court in *Employment Div., Dept of Human Services of Oregon v. Smith,* 494 U.S. 872 (1990) (*Smith* hereafter) (ruling that religious believers may not obtain exemptions to religion-neutral laws of general applicability that infringe on their religious practices). In *Braunfeld v. Brown*  366 U.S., at 606 (1961) the Supreme Court seemed to suggest that the Free Exercise Clause might sometimes constitutionally mandate exemptions. And in *Sherbert v. Verner* 374 U.S. 398 (1963), the Court expressly adopted the constitutional exemption model, under which sincere religious objectors had a presumptive constitutional right to an exemption. *Wisconsin v. Yoder*, 406 U.S. 205 (1972) reaffirmed this. In *Smith*, the United States Supreme Court avoided consideration of a claim for the sacramental use of peyote by declining to apply the compelling interest test to the sacramental use of peyote by members of the Native American Church as it had previously applied the compelling interest test in *Sherbert v. Verner,* 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972).

Document received by the MI Wayne 3rd Circuit Court.

In response to the ruling in *Smith,* Congress enacted the RFRA. RFRA was meant to apply to all branches of government, and both to federal and state law. This law provides that government action that substantially burdens religious exercise is invalid unless it is justified by a compelling government interest and is the least restrictive way to achieve that interest. Responding to the RFRA, in *City of Boerne v. Flores*, 521 U.S. 507; 117 S. Ct. 2157; 138 L. Ed. 2d 624 (1997) (hereinafter *Boerne*),  the Supreme Court held that RFRA exceeded federal power when applied to state laws, but didn't touch it as to federal law. RFRA, as applied to state laws that place incidental burdens on religion, exceeded Congress' power to interpret state protection of fundamental rights. Since 1997, about a dozen states enacted similar state-level RFRAs as to state law, and about a dozen more interpreted their state constitutions to follow the *Sherbert* model rather than the *Smith* model. Michigan applies the *Sherbert* model which requires the government to demonstrate a compelling government interest and the least restrictive way to achieve that interest:

> The purposes of the RFRA are to "restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 US 398 [83 S.Ct. 1790, 10 L.Ed.2d 965] (1963) and *Wisconsin v. Yoder*, 406 US 205 [92 S.Ct. 1526, 32 L.Ed.2d 15] (1972)" and "to provide a claim or defense to persons whose religious exercise is substantially burdened by government." 42 U.S.C. § 2000bb(b)(1),(2)...Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. [42 U.S.C. § 2000bb–1.]

*Jesus Ctr. v. Farmington Hills Zoning Bd. of Appeals*, 215 Mich. App. 54, 62–63, 544 N.W.2d 698, 702–03 (1996). By its terms, the RFRA requires this Court to consider four questions, each the threshold of the next: (1) whether Soul Tribe's free "exercise of religion" was adversely affected by the City of Detroit's actions; (2) whether the City's actions "substantially burdened" Soul Tribe's exercise of religion; (3) whether the City's actions were "in furtherance of a

Document received by the MI Wayne 3rd Circuit Court.

compelling governmental interest"; and (4) whether the City's actions were "the least restrictive means of furthering that compelling governmental interest." *Id*. 63, 544 N.W.2d 698, 703 (1996).

Soul Tribe's free "exercise of religion" was adversely affected by the unlawful search warrant executed by the City of Detroit Police Department and this subsequent nuisance abatement action pursued on behalf of the City.  Soul Tribes is an ecclesiastical non-profit corporation duly organized and existing under the laws of the State of Michigan, with its principal place of business located at 15000 Southfield Rd, Detroit, MI 48223. Soul Tribes is dedicated to support religious freedom and practices and has been actively involved in fostering healing and growth within individuals and communities through traditional, indigenous practices including the use of mushrooms, sound therapy, breathwork, and ceremonial work. As a result of the City's raid, sacraments used for religious ceremonies were seized and disrupted Soul Tribe's exercise of religion. Further, the City is requesting this Court to essentially ban Defendants' religious customs in its nuisance abatement action thereby substantially burdening the Defendants' exercise of religion. However, not only does the City fail to demonstrate a compelling governmental interest but it also fails to show it implemented the least restrictive way of achieving that interest.

**A. The City of Detroit Fails to Demonstrate a Compelling Governmental Interest Barring Soul Tribe's Sacramental Use of Mushrooms.**

A United States Supreme Court case[1], analogous in facts, will help resolve Defendants' RFRA defense before this Court. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 126 S. Ct. 1211, 163 L. Ed. 2d 1017 (2006) (*UDV* hereafter).

---

[1] This case is mandatory authority because the Michigan Constitution contains its own guarantee of religious freedom which is at least as protective of religious liberty as the United States Constitution. *Winkler by Winkler v. Marist Fathers of Detroit, Inc.*, 500 Mich. 327, 901 N.W.2d 566, 348 Ed. Law Rep. 410 (2017)

Document received by the MI Wayne 3rd Circuit Court.

In *UDV*, plaintiffs were a religious sect who received communion by drinking a sacramental tea that contains a hallucinogen regulated under the Controlled Substances Act by the Federal Government. The Government conceded that this practice was a sincere exercise of religion, but nonetheless sought to prohibit the small American branch of the sect from engaging in the practice, on the ground that the Controlled Substances Act bars all use of the hallucinogen. The sect sued to block enforcement against it of the ban on the sacramental tea, and moved for a preliminary injunction. It relied on the Religious Freedom Restoration Act of 1993, which prohibits the Federal Government from substantially burdening a person's exercise of religion, unless the Government "demonstrates that application of the burden to the person" represents the least restrictive means of advancing a compelling interest. 42 U.S.C. § 2000bb–1(b). The Government argued, however, that this burden did not violate RFRA, because applying the Controlled Substances Act in this case was the least restrictive means of advancing three compelling governmental interests: protecting the health and safety of UDV members, preventing the diversion of hoasca from the church to recreational users, and complying with the 1971 United Nations Convention on Psychotropic Substances, a treaty signed by the United States and implemented by the Act. Affirming the preliminary injunction in favor of the sect, the court held that the Government failed to demonstrate compelling interest in barring sect's sacramental use of a hallucinogen….The court reasoned that [u]nder the more focused inquiry required by RFRA and the compelling interest test, the Government's mere invocation of the general characteristics of Schedule I substances, as set forth in the Controlled Substances Act, cannot carry the day.

*Id.* at 423, 432 126 S. Ct. 1211, 1216, 1221 (2006). The City of Detroit raises similar concerns as the Federal Government. Moreover, the City contends that a building or place is a nuisance per se when "used for the unlawful manufacture, transporting, sale, keeping for sale, bartering, or furnishing of a controlled substance." MCL §600.3801 Psilocybin mushrooms are a controlled substance under MCL 333.7212. *See Plaintiff's Motion for Order to Show Cause Requiring Immediate Abatement of Nuisance p.6-9 and Plaintiff's Ex Parte Motion for TRO and Preliminary Injunction p. 7 ¶2* . Like the Federal Government in *UDV,* the City of Detroit's mere invocation of general characteristics of conduct and substances regulated under a jurisdiction's controlled substances act, is not enough to satisfy the RFRA and the compelling interest test. As such, this Court should deny Plaintiff's Motions.

Document received by the MI Wayne 3rd Circuit Court.

**B.   The City of Detroit Failed to Implement the Least Restrictive Means to Achieve Their Governmental Interest.**

On November 2, 2021, the citizens of Detroit voted for their city to adopt Proposal E which decriminalized personal possession and therapeutic use of Entheogenic Plants including the mushrooms seized from Defendant's property. The City decided to ignore this Proposal and instead took a more restrictive measure by forcing Defendants to abate their religious practices under the guise of a public nuisance pursuant to §8-15-46 of the City of Detroit Code. Certainly, enjoining Defendants' from lawful religious exercise is not the least restrictive means the City could have implemented to achieve its governmental interest. For example, in *UDV,* the district court addressed the Federal Government's interests in its preliminary injunction order without banning or enjoining the free exercise of religion.

> The court entered a preliminary injunction prohibiting the Government from enforcing the Controlled Substances Act with respect to the UDV's importation and use of hoasca. The injunction requires the church to import the tea pursuant to federal permits, to restrict control over the tea to persons of church authority, and to warn particularly susceptible UDV members of the dangers of hoasca. The injunction also provides that "if [the Government] believe[s] that evidence exists that hoasca has negatively affected the health of UDV members," or "that a shipment of hoasca contain[s] particularly dangerous levels of DMT, [the Government] may apply to the Court for an expedite[d] determination of whether the evidence warrants suspension or revocation of [the UDV's authority to use hoasca]." (internal citations omitted)

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 427, 126 S. Ct. 1211, 1218, 163 L. Ed. 2d 1017 (2006). The City of Detroit violated the RFRA by failing to implement the least restrictive means to achieve their governmental interest. They ignored the will of the people and violated the Defendants' religious freedoms.

Document received by the MI Wayne 3rd Circuit Court.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court recognize the

sincerity of Defendants' religious beliefs, the Constitution's protections of exercising those

beliefs protected by the Religious Freedom Restoration Act and deny the Plaintiff's motion for a

temporary restraining order and injunction as it would violate the US Constitution and Michigan

Constitution. Defendants request this case be dismissed for the reasons argued in this brief or in

the alternative that the case be set for a trial on the merits with no preliminary injunction.

<br>

                                         **CANNABIS COUNSEL®**
                                         **a registered Trademark and d/b/a of**
                                         **Rivertown Law Firm, PLC**

Date:  __10/11/23__

                BY:     __/s/ Thomas MJ Lavigne__
                               Thomas Lavigne (P58395)
                               Cannabis Counsel®
                               Attorneys for Defendants

Document received by the MI Wayne 3rd Circuit Court.

## <u>FREE EXERCISE FACT APPENDIX</u>

i.   In paragraph 5, page 2 of the Verified Complaint, the City's attorney describes Soul Tribe's leader, Robert Shumaker, more like he is a drug dealer versus religious leader.  In doing so, they state that Mr. Shumaker's spiritual name, Shaman Bobby Shu, instead an "alias," a word rarely used outside of the criminal/investigative context.

ii.   Also in paragraph 5, page 2, the City's attorney references Mr. Shumaker as a "self-described leader," and in support thereof, attaches what looks to be pictures of Mr. Shumaker's LinkedIn profile, wherein it states he is the Founder of Soul Tribes International Ministries.  Nothing in Exhibit 4 overtly hints or suggests that Mr. Shumaker is "Self-appointed" in his position with the Church;

iii.   In paragraph 7, page 2 of the Verified Complaint, the City's attorney writes, "The subject property is poorly masquerading as a church but instead is a distribution center for unlawful controlled substances contrary to §20-6-31 and §31-9-2 et. seq. of the 2019 Detroit City Code."   Besides these "thinly veiled" and lightweight assertions, which seem to be taking aim at the Church's sincerity, the City's attorney provides no other statement regarding the relevance of this statement.  In the context of the entirety of the City's pleadings, this statement represents an opinion of the City and its attorney than it does substantive evidence of any claim or defense they are asserting.

iv.   In paragraph 10, page 3 of the Verified Complaint, the City attorney describes the Subject Property as a public nuisance and claims that it is being utilized for "criminal activities," when every other piece of evidence submitted up to that point, save and except the City attorney's personal opinion, indicated that the entity and persons operating at that address, were indeed claiming to be a Church.

v.   In paragraph 11, page 3 of the Verified Complaint, the City attorney claims that the property is being utilized for the sale of **<u>unlawful</u>** controlled substances, especially Psilocybin or hallucinogenic mushrooms colloquially referred to as 'shrooms' in violation of §31-9-2 et. seq. of the 2019 Detroit City Code

vi.   In paragraph 13, page 3 of the Verified Complaint, the City's attorney references an alleged DEA and DOJ 'Drug Fact Sheet,' which is in fact a document purported to have been downloaded from www.getsmartaboutdrugs.com in 2020 and bears no authors name, nor does it cite to ANY scientific literature in making the assertions it does.   And in fact, the actual state of the medical science regarding psilocybin in 2020 calls into question the validity of the vast majority of the claims being made on the random web print out attached as Exhibit 6 to the Verified Complaint.  Additionally, the document contradicts itself by alleging that

Document received by the MI Wayne 3rd Circuit Court.

Psilocybin is abused by consuming it orally, yet in the paragraph below allege that its effects on the body include nausea, vomiting, muscle weakness, and lack of coordination.  In reality, most experts and courts across the country which have reviewed the issue agree that nausea and vomiting tend to be drug effects which preclude a high abuse potential.  Considering the foregoing, this "Drug Fact Sheet," on top of not constituting credible evidence in support of a Temporary Restraining Order, shows the City's in ability to see, much less consider, any evidence contrary to their foregone assumption- that the Church's activities are unlawful because they are religious.

vii. The Church's website lists copious amounts of scientific research on its website that not undermine most, if not all, of the claims made on the random web print out the City submitted as Exhibit 6.  Yet, not one of the legitimate scientific studies posted on the Church's website is attached and/or mentioned in the City's pleadings.  Again, it is apparent from the facts in the record, via the pleadings and exhibits themselves, that the City's true, but unstated intent in bringing the nuisance suit and this TRO request is really simple-  quashing and destroying the Church because of the substance of its beliefs and practices and the content of its speech, not the welfare of the Citizens of Detroit.

viii.    In paragraph 14, page 3, the City's attorney alleges that the Church "…is selling this controlled substance to Detroit citizens without any license to do so, and no medical or scientific oversight."  Again, in completely disregarding the evidence showing that the Church was a religious institution, states that it is selling controlled substances without a license, which license doesn't exist.  More telling of the City's intent though, is the next statement which insinuates that should the Church, a religious institution, have some "…medical or scientific oversight," then everything would be ok.  It is apparent through this statement that the City believes that the medical or scientific (i.e. secular) methods of distributing controlled substances to be completely legitimate and lawful, but those same actions, done by a religious institution, are unlawful and thereby warrants action by this Court to quash the Church and its mission before it even really starts.  As succinctly summed up by the Supreme Court in *Tandon*, you cannot, as the City has done here, blatantly, assume the worst when people go to worship, but the best when they go to work.

ix. In paragraph 15, page 3 of the Verified Complaint, the City broadly alleges that the property (i.e. the Church) is operating as an unlicensed marijuana dispensary, without one iota of credible evidence proffered in support of its contention.  And in fact, the City seized a large amount of commercial hemp from the Church, which had never been sold, or is illegal in any way.

Document received by the MI Wayne 3rd Circuit Court.

x.  In paragraphs 17-19 of the Verified Complaint, the City references three isolated parts of the Church's main and tangential websites.  The City never states, even later in this pleading, the relevance of these citations to the overall claims being asserted by the City.  Again, as noted above, the Church's website(s), contain a plethora of information about its stated beliefs, purpose/mission, and other scientific information regarding its sacraments-none of which is ever mentioned by the City, as it the information contained on those pages clearly cut against its conclusion that the Church is operating unlawfully.

xi.  In paragraph 20, page 4, the City states that all properties operating in violation of the property maintenance code are per se nuisances and then insinuates, without further discussion or evidence presented, that the church is operating for retail purposes, "...lawful or not."  Again, the City has failed, outside of making perfunctory stabs at the religious nature of the Church, failed to present one piece of competent evidence or discussion around the validity of the Church's religious practices.  The City is merely pointing the Court to everything about the Church's religious practice that it finds offensive, and asking that the Court declare such offensive elements to be unlawful and actionable.  However, the City's belief about whether the Church's religious practice is valid or not, is a whole separate legal question that should be addressed and decided on its own merits, regardless of way the City attorney feels about the matter.

xii.  In paragraph 25, page 4 of the Verified Complaint, the City alleges that, "The Subject Property has been the source of numerous complaints from Detroit City Council, and neighboring city residents."  This allegation should be taken with a grain of salt, because as it stands, this assertion, like many others in the City's pleadings, is bald and lacks any evidentiary substantiation.  As such, this allegation more properly evidences the City's intention to infringe the free exercise rights of the Church and its followers, because of the content of their beliefs and practices, not because they are engaged in unlawful or not constitutionally protected behavior.

xiii.  The second full paragraph of plaintiff's Ex Parte Motion, on pages 1-2, states that there is "...a grave risk of irreparable injury to the people of Detroit in consuming unregulated and untested controlled substances, in an uninspected building, served to them by **scofflaws**." (emphasis added).  Here, the City's attorney has resorted to calling the Church and its members "scofflaws," which, potential ethical and professionalism issues aside, is assuredly evidence of the City's intent in this matter (i.e. to infringe upon the rights of the Church because it abhors the substance of its beliefs and practices).   The members of the Church, just like every other citizen of the United States, has a very certain and highly protected right to the free exercise of their religion.  As such, whether a person

Document received by the MI Wayne 3rd Circuit Court.

acting in a manner consistent with their sincerely held religious beliefs can be considered a "scofflaw" or not **HAS** to be analyzed in relation to their free exercise rights.  Any bareboned conclusion that religious practitioners, engaging in a sincerely held religious practice is a "scofflaw," without any substantive evidence or analysis of their free exercise rights, is clearly being made by an individual that takes issue with the fundamental nature of the religious beliefs and practices and not the potential or inherent lawful/unlawfulness of the activity itself.

xiv. In that same paragraph, the City alleges that the Church is a "business," despite copious amounts of evidence to the contrary in the Court record, in the pleadings, and in the public record. Again, the conclusion has already been made by the City that the conduct at issue, while obviously religious in nature, is unlawful, without regard to a free exercise/constitutional analysis, and should be punished and quashed by the Court.

xv. And yet again, in the SAME paragraph, the City alleges that, "…the City continues to incur costs due to the need for continuous surveillance, inspections, enforcement actions, search warrants and the handling of citizen complaints due to the nature of the illegal business." Here, as with the other instances aforementioned, the City blatantly alludes to the Church as a business, and in this instance even an "illegal business," without any substantive evidence or analysis to substantiate those assertions.

xvi.     In the second full paragraph on page 4 of the Ex Parte Motion, the City states that there is "…a great danger in allowing make-shift cany bars and pills, filled with unknown amounts of unregulated hallucinogenic substances, on the streets of Detroit."  Again, without further explanation or credible evidence offered in support of its foregone conclusion (that the Church's religious practice is "unlawful"), the City characterizes the Church's sacrament packaging as "make shift;" and insinuates that, because the dosing of sacrament could contain "unknown" amounts of "hallucinogenic" substances, creates some type of special interests that the government has to protect.  However, should the City's attorney cracked the book on free exercise law, they would have readily seen that the U.S. Supreme Court has previously addressed the religious use of ayahuasca, a sacred plant admixture containing the controlled substance Dimethyltryptamine in unknown amounts.  In that case, the U.S. Supreme Court declared that the government's claimed interest in enforcing the federal CSA because ayahuasca inherently varies in potency missed the point because they, just as the City here, have failed to present evidence to show that the religious practitioners and their sacrament had ever harmed anyone, despite there being fluctuations in potency. And moreover, the City fails to state how offering the same kind of exemptions

Document received by the MI Wayne 3rd Circuit Court.

offered to secular uses under the CSA, with the attendant regulation that comes with it, would not remedy the issue, if any, with variance in sacrament potency. Here, like in so many other parts of the City's pleadings, prove up the Church's assertion that the City offers all kinds of secular exemptions for comparable secular conduct that implicates the exact same state interest(s) as the religious use at issue here.  However, the City hasn't alleged the existence, and the statutes are bereft of, a religious exemption scheme.  As such, there is NO DOUBT that the laws and ordinances at issue are not generally applicable.

xvii.    In the same paragraph, the City alleges that, "It is an unfortunately common occurrence that person selling controlled substances will adulterate them in an attempt to save money or increase effect."  Again, this statement is nothing more than a bald assertion that, because some "others" (unidentified) who distribute controlled substances, might adulterate them, that this Court should just assume, without further evidence or discussion, that it is the intention of the Church to do the same.  This statement, like the multitude of others made by the City without further discussion or evidence, is nothing more than a "thinly-veiled" attempt by the City to inject its counsel's own personal opinion, rather than injecting provable objective facts, into the record.  The City's counsel's constant injection of their personal, and obviously highly biased opinion, into the Court record, does nothing but brightly highlight the lack of neutrality not only in the laws and ordinances at issue, but also in the City's efforts to enforce those laws and ordinances.

xviii.   In the same paragraph, the City alleges that, "If the defendants can't be bothered to follow the law or seek proper licensing, it would be naïve to assume they are especially diligent in matters of hygiene as well.  The interior of the building does little to engender the trust in the defendants' standard of care as well."  Again, without any further discussion or presentation of credible evidence, the City wants the Court to assume that no statutory scheme exists that would both accommodate the Church's religious beliefs and practices, and also protect the government's interest in the health and safety of the City's citizens.  However, the City fails, again, to point to where there is any exemption within the City's regulatory scheme that allows for religious exemptions.  Instead of taking the time to carefully prove and demonstrate its points, the City relies on its own bald assertions to establish that its interest would not be sufficiently protected should a religious exemption, commensurate with the secular exceptions granted, particularly under the City's controlled substance ordinances be extended to the Church.  As an attorney, and not public health expert or official, lacks the necessary expertise to opine on these matters.  Considering this, it is obvious that the City attorney's bald assertions here are nothing more than injecting its lack of

Document received by the MI Wayne 3rd Circuit Court.

neutrality in enforcing the laws, into this judicial proceeding.  The Michigan and U.S. constitutions are offended through these efforts by the City.  Finally, the City's assertion that the "…interior of the building does little to engender trust in the defendants' standard of care" is again nothing but a mere conclusory allegation and the picture offered in support of that allegation (Exhibit 2) does nothing to explain further how the photo goes towards proving the allegation.

xix.     In the last paragraph on Page 4, the City again, without evidence or further explanation characterizes the Church as an "illegal business" that is "flouting the law by operating outside all regulatory boundaries."  Again, the City makes these regulatory boundary allegations but does not state or much less show that religious applications are accommodated within the regulatory scheme.  Most importantly, however, the City fails to show how, should the Church be offered the same regulatory solace as that offered to secular uses of controlled substances, that its interest would be compromised in some unique or special way that could not be addressed through any manner less restrictive of the Church's free exercise rights.   As such, any accusations that the Church is operating outside of some "regulatory boundaries," without accommodation within those boundaries, for religious practitioners, then these statements are nothing but a self-fulfilling prophecy, which clearly runs afoul the State and federal constitutions.

xx. The same paragraph next states that the Church is "…openly advertising and even offering to deliver controlled substances.  Defendants cannot be allowed to operate an 'Uber Eats' if controlled substances in the City."  Again, here is yet another statement made without evidentiary substantiation or meaningful analysis or discussion in the record. As such, this statement represents nothing more than the City's biased speculation and conjecture and seriously calls into the question the City's neutrality in bringing about the entire set of circumstances present in this case;

xxi.     In the same paragraph, except now on top of page 5 of the Ex Parte Motion, the City alleges that the Church's "brazen activity" will not stop without Court "oversight."  In support of this bald assertion, the City offers statements made to the Metro Times newspaper by Church Leader Robert Schumake, stating that he intended to open the Church back up on October 2nd.  These statements, again, are nothing but a poorly disguised attempt to hide the City's lack of neutrality in this matter.   For one, the use of Court "oversight" is extremely misleading because the City wants to completely shut down the Church, no oversight needed from the Court in that scenario.  Moreover, instead of asking how the City and the law could possibly accommodate the Church's religious practice, the City just wants to shut it down, period.  The law demands that a much more precise and narrowly tailored solution be crafted, otherwise the free exercise rights of the

Document received by the MI Wayne 3rd Circuit Court.

Church and its members, be subject to the official discretion of the City and its prosecutors.  Lastly, the City has not shown that the Church is offered any safe harbor (i.e. qualify for an exemption) under any law or ordinance applicable in this matter.  Fortunately for the Church and its members, the law requires that such safe harbor be extended to the Church and its members, to the same extent it is offered to comparable secular conduct.  The City has shown no such extension existing in the law or willingness by the City to offer such an extension.

xxii.    In the same paragraph, the City states that, "…based on past practices, the City has found that illegal dispensaries will rarely shut down completely as opposed to moving and/or going underground."  Consequently, the City argues, "This temporary restraining order is absolutely necessary to keep all parties whole and to keep these controlled substances off of City streets."  Here, again, the City continues to mischaracterize, intentionally, the nature of the Church's activities-religious- and tries to categorize them as "unlawful" behavior, without any allusion to or engagement in a free exercise analysis.  This is a fatal flaw for the City.  As discussed herein, the City is bound to show a compelling governmental interest in enforcing the laws and ordinances at issue against the Church and its members.  Here they have failed to do that, much less provide any evidence necessary for the Court to engage in a meaningful analysis of their contentions under the free exercise analysis.  As such, the City's request for a TRO or any type of relief against and contrary to the free exercise rights of the defendants should be DENIED in their entirety as they have not even begun to scratch the surface of meeting their evidentiary and constitutional burden in this case.

xxiii.    In the second full paragraph on page 5 of the Ex Parte Motion, the City states that, "The location doesn't have a business license and has no right to operate as a marihuana dispensary or any other commercial use contrary to the City of Detroit Maintenance Code.  Obviously, illegal drug dealing is a detriment to the City of Detroit that directly contributes to violence, lawlessness, and escalation of blight.  Furthermore, every illegal sale is a loss of tax revenue, loss of a customer to legitimate businesses, waste of police resources, waster of BSEED resources and a further eroding of consumer and licensee faith in City services."  This allegation again misses the entire mark, and does nothing but highlight, in bold, the city's intention to label the Church's religious exercise illegal, unlawful, and no different than any other commercial enterprise, when in fact the evidence clearly denotes that the Church and its members were only engaging in the protected free exercise of their religion.   As such, the City's proclivity to make ad-hoc determinations as to what is lawful and what is legal/illegal, without regard to any free exercise analysis which is inextricably intertwined with determining these

Document received by the MI Wayne 3rd Circuit Court.

issues, is prima facie evidence of bad faith, religious targeting, and the fruit of a set of laws, ordinances, and enforcement system that is far from neutral.

xxiv.    The last paragraph on page 5 of the Ex Parte Motion, the City ends its factual allegations with, "The only way to adequately protect the City's interest is to force the closure of the business to prevent the continuous sale of illegal, untested, and unsafe controlled substances to the citizens of Detroit."  Again, more of the same conclusory, unfounded, and unsubstantiated allegations that the Church is a business, that their religious exercise is illegal, and that their conduct constitutes a safety hazard for the City's citizens.  These bald assertions, without more, are meaningless and the City has proffered not one piece of competent evidence in support of these assertions.  And in fact, it is telling that the City doesn't even mention the Church and its members' interest in engaging in the protected free exercise of their religion.  There is no other conclusion to be reached than the City is bringing the present civil action in an effort to harass and discourage the Church and its members from engaging in their otherwise protected free exercise of religion; all because the City and its employees/officials do not like and are offended by the substance of the Church and its members' sincere religious beliefs and practices.  Otherwise, the City would have taken the time to actually address the free exercise issues inherent in bringing a civil suit against religious practitioners, seeking to enjoin and shut down their entire religious enterprise. The City's unstated, but assuredly implied belief, that the Church's practices at issue are unlawful, illegal, and not a valid religious exercise, without more, is undoubtedly inadequate to maintain any action, much less a temporary restraining order against a Church, which order will likely cause its semi-permanent shut down while this case goes up on appeal and/or federal court, does not carry the day.

xxv.    On September 26, 2023, City Councilman James Tate reposted a Metro Times article about the raid on plaintiff's Church, stating as follows: "BLATANT illegal activity will not be tolerated in D1….and we thank the enforcement agencies for addressing the concerns of our community."  This statement by the learned Councilman further bolsters the Church's claim that this raid was a product of government targeting of religion, totally bereft of any neutrality, and a product of an unconstitutional conspiracy to infringe upon the free exercise rights of the Church and its members.  As previously stated, for the learned Councilman to make such a proclamation that the Church's activities are "BLATANT illegal activity…" it must include a detailed analysis of how the Church's conduct was not a constitutionally protected free exercise of their religious freedom rights under the Michigan and U.S. Constitutions.  By not engaging in any meaningful analysis or discussion about the merits of the Church's first amendment claims,

Document received by the MI Wayne 3rd Circuit Court.

the City and its officials have made it well known what is the driving force behind this whole controversy- their personal feeling

Document received by the MI Wayne 3rd Circuit Court.